UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUDANE LEFEVRE,

                Plaintiff,           1:14-cv-155
                                                                 (GLS/RFT)

       v.

COUNTY OF ALBANY et al.,

                Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Levidow, Levidow & Oberman          PETER P. LODUCA, ESQ.
299 Broadway - Suite 1800
New York, NY 10007

**FOR THE DEFENDANTS:**
Albany County Attorney's Office          PATRICK J. COLLINS, ESQ.
112 State Street, Suite 1010
Albany, NY 12207

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Sudane Lefevre commenced this action against defendants County of Albany and County of Albany District Attorneys Office, asserting claims pursuant to 42 U.S.C. § 1983 based upon violations of his Fourth

and Fourteenth Amendment rights, as well as claims pursuant to New York state law, for malicious prosecution and false arrest. (*See generally* Compl., Dkt. No. 1.) Pending is defendants' motion to dismiss the complaint in its entirety for failure to state a claim. (Dkt. No. 10.) For the reasons that follow, the motion is granted.

## II. **Background**[1]

On July 9, 2011, Lefevre made a 911 call seeking help for another individual who had overdosed on drugs. (Compl. ¶ 16.) When members of the Colonie Police Department responded to the call, Lefevre was arrested and charged with possession of drugs and loitering, pursuant to N.Y. Penal Law §§ 220.09, 220.60, and 240.36. (*Id.* ¶¶ 16-17.) Lefevre was released on bail pending indictment by a grand jury. (*Id.* ¶ 18.) After Lefevre's arrest, but before the indictment was handed down, the New York State legislature, on July 20, 2011, passed a "Good Samaritan Law," which was to become effective on September 18, 2011. (*Id.* ¶ 19); *see* N.Y. Penal Law § 220.78. This law states that, with certain limited exceptions, "[a] person who, in good faith, seeks health care for someone who is

---

[1] Unless otherwise noted, the facts are drawn from Lefevre's complaint and presented in the light most favorable to him.

2

experiencing a drug or alcohol overdose or other life threatening medical emergency shall not be charged or prosecuted for a controlled substance offense under article two hundred twenty" of the Penal Law.  N.Y. Penal Law § 220.78(1).

On October 28, 2011, Lefevre was indicted by a grand jury for drug possession and loitering.  (Compl. ¶ 20.)  It appears that Lefevre ultimately pleaded guilty to a criminal offense, though it is not clear as alleged to which charge he pleaded guilty.  (*Id.* ¶ 39.)  On May 9, 2012, he was sentenced to three and one-half years in prison for a drug possession-related offense.  (*Id.* ¶ 28.)  While incarcerated, he "made a motion to be released," in which he argued that the Good Samaritan Law precluded him from being charged or prosecuted for any offense.  (*Id.* ¶ 29.)  Lefevre alleges that defendants testified falsely and withheld information from the judge in his criminal case by not disclosing that the Good Samaritan Law applied to the facts of his case.  (*Id.* ¶ 22.)  On February 20, 2013, all charges were dismissed after Lefevre had been incarcerated for approximately one year.  (*Id.* ¶ 23.)

Lefevre commenced this action in February 2014, alleging that he was falsely prosecuted and imprisoned, in that he was charged with drug

possession even though defendants knew such charges were false. (*Id.* ¶¶ 24, 37.) He asserts causes of action pursuant to 42 U.S.C. § 1983 for violations of his Fourth Amendment right to be free from illegal search and seizure, his Sixth Amendment right to be informed of the charges against him, and his Fourteenth Amendment due process and equal protection rights.[2] (*Id.* ¶¶ 34-46.) He also asserts claims of malicious prosecution, false arrest, and negligence pursuant to New York common law.[3] (*Id.* ¶¶ 15-26, 27-33, 47-51.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the

---

[2] At several points in his complaint, Lefevre also mentions a violation of the First Amendment, (Compl. ¶¶ 2-3, 41), though this appears to be in error, as no First Amendment cause of action is pleaded, nor are there any facts alleged that would support such a claim.

[3] Although Lefevre has a fourth cause of action labeled "Negligence in Performance of Duties," (Compl. ¶¶ 47-51), in his response to defendants' motion to dismiss, he appears to argue that his allegations regarding negligence merely serve as a basis to impose municipal liability on the County, and not as an independent cause of action. (Dkt. No. 14 at 8.) He also alleges that he was deprived of the right "to be informed of the nature and cause of the accusation against him as secured to him under the Sixth and Fourteenth Amendments," (Compl. ¶ 44(b)), and the rights "not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws secured by the Fourteenth Amendment," (*id.* ¶ 44(c)), but he has pleaded no facts in support of such claims, nor has he addressed these claims in opposition to defendants' motion to dismiss for failure to state a claim. Accordingly, in addition to the reasons discussed herein, to the extent Lefevre alleges a Sixth Amendment claim or a Fourteenth Amendment due process and/or equal protection claim, those claims are dismissed.

court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV. Discussion

Although not a model of clarity, the theory pleaded in Lefevre's complaint as to his section 1983 cause(s) of action appears to be that he should not have been prosecuted for drug possession, presumably because of the passage of the Good Samaritan Law, and, as a result, he was improperly incarcerated on such a charge. (*See generally* Compl.) He has asserted analogous claims for malicious prosecution and false imprisonment under state law. (*Id.*) In their motion, defendants have offered several arguments in favor of dismissing the complaint. Defendants first argue that the District Attorney's Office is absolutely immune from liability for malicious prosecution, under both section 1983 and state law, for its decision to initiate and pursue a prosecution against Lefevre. (Dkt. No. 10, Attach. 1 at 5-7.) Defendants further argue that there is no basis to hold the County of Albany liable, given the absolute immunity enjoyed by the District Attorney's Office, (*id.* at 7-8), and because Lefevre has not alleged any facts to support the imposition of municipal liability on the County, (*id.* at 8-12). In response, Lefevre generically

5

argues that decisions of a municipal policymaker can subject a municipality to liability, (Dkt. No. 14 at 5-7), and that he has adequately pleaded defendants' "failure to adequately train and supervise their municipal employees," such that the County could be held liable, (*id.* at 7-8). For the following reasons, defendants' motion is granted, and Lefevre's complaint is dismissed.

### A. <u>Prosecutorial Immunity</u>

As noted above, defendants argue that the District Attorney's Office is absolutely immune from liability for "all conduct falling within the prosecutorial function," and thus Lefevre's malicious prosecution claim against the District Attorney's Office should be dismissed. (Dkt. No. 10, Attach. 1 at 5-7.) Lefevre has offered no response to this argument. Consequently, for the following reasons, the court agrees with defendants and dismisses the claims against the District Attorney's Office.

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.");

*Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 502-05 (2d Cir. 2004) (holding that absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (noting that prosecutorial immunity covers virtually all acts associated with the prosecutor's function). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *See Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). Absolute immunity is defeated only when the prosecutor is engaging in investigative or administrative functions. *See Bernard*, 356 F.3d at 502-03.

Here, reading the complaint in a light most favorable to Lefevre, he appears to allege that members of the District Attorney's Office prosecuted him for drug possession, despite the dictates of the Good Samaritan Law.[4] (Compl. ¶¶ 15-25.) However, in his response to defendants' motion to dismiss, Lefevre has utterly failed to address defendants' prosecutorial

---

[4] Defendants note, in passing, their doubts that the Good Samaritan Law even applies to the underlying criminal proceedings in this matter, (Dkt. No. 10, Attach. 1 at 7 n.1), but this is not an issue that has been fully raised or briefed by either side in this action, and the court will thus not venture to address it here.

immunity argument. Although he prefaces his argument with the point heading: "The motion should be denied because defendants are not immune from suit," the substance of his argument does not even mention immunity. (Dkt. No. 14 at 4-8.) "The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." *Barmore v. Aidala*, 419 F. Supp. 2d 193, 201-02 (N.D.N.Y. 2005) (internal citations omitted); *see Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" (quoting *Williams v. Mirabal*, No. 11 Civ. 366, 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013)). In any event, the court is satisfied that the District Attorney's Office is immune from liability here, as Lefevre's claims appear to stem only from the decision to prosecute him, and there are no allegations that any employees of the office were acting in anything other than a prosecutorial capacity. (*See generally* Compl.) Accordingly, the District Attorney's Office is entitled to absolute immunity from liability under § 1983 for the conduct alleged here, and the claims against it are dismissed.

8

**B.     Municipal Liability**

With respect to the County of Albany, defendants argue that Lefevre has not pleaded sufficient facts to establish any possible basis for imposing municipal liability on the County. (Dkt. No. 10, Attach. 1 at 8-12.) In response, Lefevre argues that the County may be liable either by way of an act of a municipal policymaker, or because of a failure to adequately train employees to prevent constitutional violations. (Dkt. No. 14 at 4-8.) For the reasons below, both of Lefevre's arguments are unavailing here, and the claims against the County are dismissed.

A municipality may be liable for the constitutional violations of its employees provided that any such violations occurred pursuant to an official policy or custom. *See Mayo v. Cnty. of Albany*, No. 07-cv-823, 2009 WL 935804, at *2 (N.D.N.Y. Apr. 3, 2009); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). A successful claim of municipal liability under section 1983, therefore, requires the plaintiff "'to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zherka v. City of N.Y.*, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)). To do so, a plaintiff may

9

allege: "(1) that the [municipality]'s failure to train its employees amounted to deliberate indifference to constitutional rights; (2) that there was a persistent and widespread unconstitutional governmental policy or custom; or (3) that a [municipal] policymaker approved any constitutional violation." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (citations omitted). Moreover, while this rule "does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citations omitted).

Yet, a single decision by a municipal policymaker may suffice to subject a municipality to liability under § 1983. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). "Where a municipal official 'has final authority over significant matters involving the exercise of discretion,' his choices represent government policy." *Griffin v. Vill. of Frankfort*, No. 10-CV-627, 2012 WL 4491276, at *4 (N.D.N.Y. Sept. 28, 2012) (quoting *Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005)); *see Bd. of Cnty.*

*Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 406 (1997) ("[A] final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations may, in some circumstances, give rise to municipal liability under § 1983." (internal quotation marks and citation omitted)).

Alternatively, it is well settled that "the inadequacy of . . . training may serve as the basis for § 1983 liability . . . where the failure to train amounts to deliberate indifference to the rights of persons with whom [municipal employees] come into contact." *City of Canton, Oh. v. Harris*, 489 U.S. 378, 379, 388 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional

rights." *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992) (quoting *City of Canton*, 489 U.S. at 390 n.10). As articulated by the Supreme Court, it is "ordinarily necessary" for a plaintiff to show "[a] pattern of similar constitutional violations by untrained employees [in order] to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360; *see Simms v. City of N.Y.*, 480 F. App'x 627, 629-30 (2d Cir. 2012).

Here, with respect to the County, defendants assert that Lefevre has failed to plead a *Monell* claim because the complaint merely alleges legal conclusions, and does not make out any basis for municipal liability. (Dkt. No. 10, Attach. 1 at 8-12; Dkt. No. 15 at 4-9.) With respect to Lefevre's allegation that the County failed to properly train or supervise its employees, defendants contend that the complaint is too conclusory, and that his municipal liability claim must fail because he has not alleged deliberate indifference. (Dkt. No. 15 at 4-9.)

As limited by his response to defendants' motion, Lefevre appears to argue that he can establish municipal liability through either the decision of a municipal policymaker, (Dkt. No. 14 at 7), or because of a failure to train municipal employees on the part of the County, (*id.* at 8). Notably,

12

although Lefevre does accurately state these general principles of law, his response to defendants' motion, much like the complaint itself, is devoid of any facts that would support his conclusory assertions. For example, Lefevre states that his "federal claims should not be dismissed because his improper prosecution constituted acts taken by a municipal employee who had final policymaking authority in the area in which the action was taken." (*Id.* at 7.) However, Lefevre has sued only the County and the District Attorney's Office, and nowhere in his opposition to defendants' motion does he indicate which municipal employee he is alleging to be the policymaker who took such unlawful action. Such an allegation is equally absent from his complaint. Therefore, the court is left unable to assess "whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 543 (D. Conn. 2006).

Similarly, with respect to his failure to train theory, Lefevre contends that his "complaint fairly contemplates a claim that his improper prosecution resulted from defendants' failure to adequately train and supervise their municipal employees," because "[h]e has alleged that defendants 'negligently, carelessly and recklessly performed their duties.'"

13

(Dkt. No. 14 at 8 (quoting Compl. ¶ 48).) However, his complaint is rife with legal conclusions, and he has alleged no facts regarding the training and supervision of municipal employees. His conclusory allegations that defendants "were negligent" are not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Furthermore, because Lefevre has failed to adequately plead that the County's failure to train and supervise amounted to deliberate indifference, he has failed to state a claim of municipal liability. The complaint nowhere mentions "deliberate indifference" in reference to Lefevre's municipal liability claim, and only generically references the County's failure to properly train and supervise, but it fatally fails to allege any facts that support this conclusory assertion. *See Simms*, 480 F. App'x at 631 n.4 (noting that a plaintiff's "mere conclusory allegation that the [municipality] failed to train its [employees], without any supporting factual material," is not sufficient to state a municipal liability claim under section 1983). He has pleaded no facts regarding a pattern of similar conduct, or knowledge on the part of defendants, that would inform a finding of deliberate indifference, aside from the single incident of prosecution he alleges occurred to him. *See id.*; *Ricciuti*, 941 F.2d at 123. Lefevre's failure to adequately plead sufficient

14

facts in support of municipal liability mandates dismissal of his *Monell* claim against the County. *See Turczyn ex rel. McGregor v. City of Utica*, No. 6:13-cv-1357, 2014 WL 6685476, at *6 (N.D.N.Y. Nov. 26, 2014) (dismissing failure to train *Monell* claim, even where the plaintiff did allege "deliberate indifference," because the plaintiff failed to plead facts that supported the deliberate indifference elements); *Gauthier v. Kirkpatrick*, Civil Action No. 2:13-cv-187, 2013 WL 6407716, at *10 (D. Vt. Dec. 9, 2013); *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012); *see also Worrell v. City of N.Y.*, No. 12-CV-6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014) (dismissing municipal liability claim premised on failure to train where the plaintiff "fail[ed] to allege instances of alleged unconstitutional activity other than the [d]efendants' single actions in her case").

## C. Remaining State Law Claims

To the extent Lefevre has adequately alleged claims pursuant to state law for malicious prosecution, false imprisonment, and negligence, those remaining claims involve only state law, and the court thus declines to exercise its supplemental jurisdiction over them in light of the dismissal of his federal claims. "In the absence of original federal jurisdiction, the

decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." *Butler v. LaBarge*, No. 9:09-CV-1106, 2010 WL 3907258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)). When all federal claims have been dismissed before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *See Kolari*, 455 F.3d at 122. Accordingly, the court declines jurisdiction over any state law claims and they are dismissed from this action.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Lefevre's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 13, 2015
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court